# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
July 28, 2023
Lyle W. Cayce
Clerk

_____

No. 22-10983
_____

IN THE MATTER OF HIGHLAND CAPITAL MANAGEMENT, L.P.

*Debtor*,

THE DUGABOY INVESTMENT TRUST,

*Appellant*,

versus

HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-1295

_____

Before WIENER, SOUTHWICK, and DUNCAN, *Circuit Judges*.

PER CURIAM:[*]

  Appellant argues that the bankruptcy court lacked jurisdiction to approve a settlement agreement among debtor Highland Capital Management, L.P., the debtor's largest prepetition creditor, and an entity

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

affiliated with Highland Capital but that was not a debtor under its Chapter 11 petition. We disagree. AFFIRMED.

FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Highland Capital entered into an agreement with UBS Securities LLC and UBS AG London Branch (together, "UBS"), under which UBS would warehouse Highland Capital's collateralized debts. UBS made a margin call on Highland Capital's account, which it could not meet, and Highland Capital allegedly began to "comingle funds in an attempt to mislead UBS." Included in these alleged dealings was a $6,616,429 sham transaction involving Highland Multi Strategy Credit Fund, L.P. ("Multi-Strat LP") and Highland Multi Strategy Credit Fund, Ltd. (we will refer to these two parties as "Multi-Strat"). Highland Capital is Multi-Strat's investment manager and has "full authority over" that entity.

UBS filed suit in New York state court in 2009 based on that 2007 agreement. By 2011, after numerous procedural changes — including the consolidating of two of UBS's actions — UBS's claims pending against Highland Capital and Multi-Strat included ones for breach of contract and fraudulent transfer.

The state court split the claims into two trial phases. Phase I included UBS's breach of contract claims against two of Highland Capital's affiliates. Phase II included claims against Highland Capital directly and Multi-Strat. Highland Capital filed its Chapter 11 petition in Delaware in October 2019, which resulted in the Phase II claims being stayed. In February 2020, the New York state court entered a $1,039,957,799.44 judgment in favor of UBS for the Phase I claims.

Highland Capital's Chapter 11 petition was transferred to the Bankruptcy Court for the Northern District of Texas. The proceedings have been contentious, prompting numerous appeals to our court. Each has been

No. 22-10983

brought by Highland Capital's co-founder, James Dondero — who is no longer affiliated with Highland Capital — or by entities that he controls, such as Appellant here.[1]

In the bankruptcy court, UBS filed joint-litigation claims against Highland Capital's estate for $1,039,957,799.40 based on the state court action. The bankruptcy court ordered Highland Capital, UBS, and numerous other parties to undergo mediation and attempt to settle UBS's claims. In the meantime, the court temporarily allowed UBS's claim for voting purposes in the amount of $94,761,076.

Eventually, UBS and Highland Capital reached a settlement which included other related entities, including Multi-Strat. On April 15, 2021, Highland Capital moved for an order approving the settlement agreement. Among the terms of the agreement were these: (1) UBS would be allowed a general, unsecured claim of $65,000,000 and a subordinated, unsecured claim of $60,000,000; (2) Multi-Strat would pay UBS $18,500,000; (3) Highland Capital would aid in UBS's collection efforts in numerous ways, including in "the investigation or prosecution of claims" against Multi-Strat and Dondero; and (4) the parties would, subject to certain exceptions, release all claims against each other, including those related to the New York action.

The only objections were by Dondero and his family trusts: The Dugaboy Investment Trust ("Dugaboy" or "Appellant") and Get Good Trust (together, the "Trusts"). They maintained that the bankruptcy court lacked jurisdiction to approve the portion of the agreement between UBS and

---

[1] *See Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.*, No. 22-10831, 2023 WL 2263022 (5th Cir. Feb. 28, 2023); *Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P.*, 57 F.4th 494 (5th Cir. 2023); *NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P.*, 48 F.4th 419 (5th Cir. 2022).

No. 22-10983

Multi-Strat because the court lacks jurisdiction to settle a claim between two non-debtors.

After a hearing, the bankruptcy court concluded that it had related-to jurisdiction because the settlement had "a conceivable effect on the estate." It additionally concluded the settlement was a core proceeding under 28 U.S.C. § 157(b)(2). It relied in part on the fact that Highland Capital is Multi-Strat's "investment manager, with full authority over" it. Consequently, there likely would have been objections if UBS and Multi-Strat attempted to enter into an independent settlement on the grounds that Highland Capital was using its control over Multi-Strat without the court's consent. The bankruptcy court did not see how this settlement agreement was any different than those involving non-debtors regularly approved by bankruptcy courts. Accordingly, it approved the settlement.

The Trusts appealed to district court, again challenging the bankruptcy court's jurisdiction. First, the district court rejected the Trusts' position that the settlement consisted of multiple sub-agreements, *i.e.*, one between UBS and Highland Capital, and another between UBS and Multi-Strat. Consequently, it examined the agreement as a whole. Because UBS agreed to release its claim against Highland Capital as part of that agreement, the settlement affected the bankruptcy estate and was within the bankruptcy court's jurisdiction.

Additionally, because Multi-Strat acts through Highland Capital, its investment manager, Multi-Strat's allegedly fraudulent transfers necessarily were initiated by Highland Capital. Therefore, UBS's state-court claims against Multi-Strat involve Highland Capital's behavior and are related to the estate. Further, Highland Capital "had to exercise its management and control rights over" Multi-Strat to approve the settlement. Those rights are part of the bankruptcy estate; thus, Multi-Strat could not execute the

4

No. 22-10983

settlement without Highland Capital's exercising control over estate property. Finally, the agreement, at the very least, constrained Highland Capital's rights, providing another alternative basis for jurisdiction.

The district court considered and affirmed the settlement. Dugaboy timely appealed to this court.

## DISCUSSION

Dugaboy raises only one issue on appeal: whether the bankruptcy court had jurisdiction to approve the portion of the settlement agreement between UBS and Multi-Strat.

We review the bankruptcy court's decision, although "we may benefit from the district court's analysis." *See In re Age Refin., Inc.*, 801 F.3d 530, 538 (5th Cir. 2015) (quotation marks and citation omitted). Findings of fact are reviewed for clear error and conclusions of law *de novo*. *Id.*

District courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Those courts are permitted to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy courts. 28 U.S.C. § 157(a). In assessing jurisdiction, there is no need "to distinguish between proceedings 'arising under', 'arising in a case under', or 'related to a case under', title 11" because "[t]hese references operate conjunctively." *In re Wood,* 825 F.2d 90, 93 (5th Cir. 1987). "Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *Id.*

"We have read this jurisdictional grant broadly, stating that the test for whether a proceeding properly invokes federal 'related to' jurisdiction is whether the outcome of the proceeding could *conceivably* affect the estate being administered in bankruptcy." *In re TXNB Internal Case*, 483 F.3d 292,

5

298 (5th Cir. 2007) (emphasis added). "Certainty is unnecessary; an action is 'related to' bankruptcy if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate." *Id.*

Once bankruptcy jurisdiction is established, the bankruptcy court's adjudicative power varies based on whether the particular proceeding is core or non-core. *See In re OCA, Inc.*, 551 F.3d 359, 367 (5th Cir. 2008). For core proceedings, the bankruptcy court may enter final judgment, subject to review by the district court. 28 U.S.C. § 157(b)(1). For non-core proceedings, the bankruptcy court's power is generally limited to submitting proposed findings and conclusions to the district court, in order for the district court to enter final judgment. *Id.* § 157(c)(1). The bankruptcy court, however, is permitted to enter final judgment over non-core proceedings if the parties consent and if referenced by the district court. *Id.* § 157(c)(2).

### I. *"Core jurisdiction"*

We begin with Highland Capital's argument that its right to control Multi-Strat is estate property. Highland Capital contends that, because the settlement agreement was outside the ordinary course of business, it was required to seek permission from the bankruptcy court before exercising those rights to cause Multi-Strat to execute the agreement, citing 11 U.S.C. § 363(b). Finally, it argues the bankruptcy court has "core jurisdiction" over proceedings under Section 363(b), not merely related-to jurisdiction. Therefore, contends Highland Capital, the bankruptcy court had core jurisdiction over the settlement agreement.

We disagree, at least in part. Whether the bankruptcy court has subject-matter related-to jurisdiction is an inquiry separate from, although similar to, whether it has the power to enter final judgment. *See In re OCA*, 551 F.3d at 367–69. We need not decide whether every event involving the

No. 22-10983

use of a debtor's property outside the ordinary course of business constitutes a core proceeding and falls under the bankruptcy court's jurisdiction. It is enough to say that if the court has jurisdiction over a mutual compromise of a claim against the estate, it possesses the power to approve that compromise. *See In re Gibraltar Res., Inc.*, 210 F.3d 573, 576 (5th Cir. 2000). In fact, "compromises are a normal part of the process of reorganization." *In re Cajun Elec. Power Co-op., Inc.*, 119 F.3d 349, 354 (5th Cir. 1997) (quotation marks and citation omitted). Therefore, we focus on whether the settlement was "at least 'related to' the bankruptcy." *See In re Wood*, 825 F.2d at 93.

## II.    *Related-to jurisdiction*

Dugaboy claims the settlement was not related to Highland Capital's bankruptcy estate. First, Dugaboy argues UBS's state court suit had no conceivable effect on the estate. It maintains the "only possible difference" between this case and one of our precedents in which we held the bankruptcy court lacked jurisdiction to enjoin certain third-party actions is that Highland Capital was the investment manager for the entity that UBS is suing. *See In re Zale Corp.*, 62 F.3d 746 (5th Cir. 1995). Dugaboy avers that because Highland Capital could never be held liable for Multi-Strat's actions, the settlement had no conceivable effect on the estate.

Dugaboy also argues that even if Highland Capital's interest in Multi-Strat was estate property, Multi-Strat's assets were not. Therefore, Dugaboy asserts the court had no authority to approve an exchange of those assets. Any effect the settlement had on the estate, Dugaboy concludes, was only because Highland Capital manipulated the agreement for that purpose, which should not be permitted.

In response, we begin with our observation that much of Dugaboy's briefing seemingly relies on the assumption that the bankruptcy court needed jurisdiction over UBS's underlying state-law claim. It did not. A settlement-

No. 22-10983

and-release is not equivalent to an adjudication on the merits. *See Matsushita Elec. Indus. Co., v. Epstein*, 516 U.S. 367, 381–82 (1996). "[I]t is widely recognized that courts without jurisdiction to hear certain claims have the power to release those claims as part of a judgment." *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1563 (3d Cir. 1994). The bankruptcy court did not assert jurisdiction over UBS's state action. It approved a bargained-for compromise of those claims. Accordingly, it needed jurisdiction only over the settlement agreement itself and over the parties who entered it, not over the underlying claims.

Additionally, Dugaboy views the settlement as two separate agreements: one between UBS and Highland Capital, and another between UBS and Multi-Strat. Dugaboy makes a vague, policy-oriented argument that Highland Capital should not be allowed to "manipulate" the agreement "in order to create bankruptcy court jurisdiction" and use Multi-Strat's assets for its own benefit. Significantly, though, it provides no authority explaining why we should isolate the UBS/Multi-Strat portion of the agreement, rather than analyzing the settlement in its entirety. We keep it whole.

Next, Dugaboy's reliance on *Zale* is misplaced because that case is distinguishable. Most notably, the settlement agreement in *Zale* was contingent on the bankruptcy court's issuing an injunction that barred *non-parties* to the agreement "from suing the settling parties for their actions in relation to the settlement." 62 F.3d at 749. In *Zale*, we emphasized the significance of this, clarifying that "the issue before [the court] [was] not whether the bankruptcy court had jurisdiction over the settlement . . . , but whether [it] had jurisdiction over an attempt to enjoin actions" by the non-parties. *Id.* at 755. No such injunction was issued here. Although Dugaboy takes issue with how it was accomplished, Multi-Strat agreed to the compromise.

8

No. 22-10983

The settlement, as a whole, was undoubtedly related to the bankruptcy. Among many other things, it resolved the in-excess-of $1 billion claim that UBS was seeking and allowed UBS two claims in the aggregate amount of $125 million. It released Highland Capital from further liability to, and required it to relinquish any claims it may have had against, UBS.

Fundamentally, the agreement altered Highland Capital's "rights, liabilities, options, or freedom of action" and "influence[d] the administration of the bankrupt estate." *See In re TXNB Internal Case*, 483 F.3d at 298.

AFFIRMED.